## COLONIAL JEWELRY CO. v. JONES.

No. 2169.   Opinion Filed October 15, 1912.

Publication Withheld Until February 8, 1913.

(127 Pac. 405.)

1. **APPEAL AND ERROR—Review—Questions of Fact.** It is a well-settled rule of this court that where the evidence on a material fact, or controlling issue, is conflicting, this court will not review the same to ascertain where the weight lies; but, if there is evidence reasonably tending to support the finding, the same will not be disturbed by this court on appeal.

2. **EVIDENCE—Parol Evidence—Invalidity of Writing.** It is competent to show by parol evidence that a contract was procured by fraud and misrepresentation, where such fraud and misrepresentation is pleaded and relied upon as a defense.

(Syllabus by Robertson, C.)

*Error from Jefferson County Court;*
*G. M. Bond, Judge.*

Action by the Colonial Jewelry Company against A. J. Jones for money due on contract. Judgment for defendant, and plaintiff brings error. Affirmed.

The Colonial Jewelry Company sued the defendant, A. J. Jones, to recover the sum of $120, alleged to be due by reason of a certain written contract, dated September 23, 1909, wherein Jones agreed to purchase from it a quantity of jewelry. The contract is pleaded, and its execution admitted by Jones, but he avers that the execution of the same was procured by fraud and through the willful misrepresentations made by one A. B. Jones, who, from the record, seems to have been, not only the salesman who took the order, but the sole proprietor of the Colonial Jewelry Company, as may be gleaned from his testimony found on page 17 of the case-made, and which is as follows:

"Q. Who called on the defendant, A. J. Jones, and precured the order for the goods described in the contract sued on in this case? A. I did. Q. Who composed the Colonial Jewelry Company at the time the order was given by A. J. Jones for the jewelry described in the contract sued on? A. Myself, A. B. Jones. Q. Was there any one else interested in the Colonial

Jewelry Company except yourself at the time of taking this order? A. There was not."

The answer of the defendant sets out fully the details and particulars of the alleged misrepresentations. The allegations of fraud in the answer were unchallenged by demurrer, or by motion to make more definite and certain, and were contradicted in the reply of the jewelry company only by a general denial. On the issues thus joined, the cause was tried to a jury, and resulted in a verdict in favor of the defendant. From the judgment entered on the verdict the plaintiff appeals.

*N. C. Peters,* for plaintiff in error.

*Bridges & Vertrees,* for defendant in error.

Opinion by ROBERTSON, C. (after stating the facts as above). There is but one question in this case, and that is, Was the execution of the contract of purchase, sued on in this case, obtained by fraud? If it was, the judgment is correct, and must stand; if not, then it should be reversed. The pleadings are amply specific to inform all' parties concerned as to the exact issues in the case. No objection to the sufficiency of the allegations of fraud as charged in the answer appears anywhere in the record. Counsel for plaintiff makes a common mistake in assuming that the purpose of admitting parol testimony on the subject of the contract was to alter, vary, or in some manner change the terms of a written instrument. Such was not the object of this testimony. The real and only purpose sought was to determine whether or not the instrument sued on and offered in evidence was in fact a contract, made and entered into by the parties freely and uninfluenced by the willful and false misrepresentations of either. For that purpose parol evidence is always admissible, and it was for that purpose alone that it was received in this case. From the record it appears that the representative of the jewelry company, after failing to sell Jones on his first visit, returned later in the day, told the merchant that he might take the goods, put them in his house, and report at the end of every two months the amount sold and keep his commission out and send the jewelry company the balance, that he would

only have to pay for the goods as he sold them, and that he would only have to remit once in every two months. Defendant in error refused to sign the contract until he had been assured by the representative of plaintiff in error that he was contracting no obligation further than to place the jewelry in his store, and to account for any portion sold. The testimony on this phase of the case by the defendant in error is as follows:

"Q. State to the jury the conversation that you and Mr. Jones, the Colonial representative, had? A. He wanted to sell it to me— By Mr. Peters: I object to that question. It's irrelevant, incompetent, and immaterial to any issue in this case. By the Court: Objection overruled. Exception. Q. Just state, Mr. Jones, to the jury how you came to sign the contract. A. He wanted to sell me some jewelry. I told him no; I didn't want to buy it, because I couldn't sell that much jewelry in ten years, and he talked on a while, and I told him I couldn't use it, that I couldn't sell it in ten years, and then he kept talking, and finally he says— Mr. Peters: Now I object to that for the reason that it is incompetent, irrelevant, and immaterial, and an attempt to vary and contradict the terms of a written contract, and it is not material to the issues of this case. By the Court: The objection overruled. By Mr. Peters: To which we except. Q. Go ahead. A. I told him I couldn't sell that much jewelry in ten years, and he kept on talking and I was looking over that contract, and come to that acceptance business there, and I says, 'This says something about an acceptance here,' and he says, 'Yes; that is that you just sign six acceptances showing your acceptance of the goods, and sign these acceptances and it'll be this way,'—says, 'You accept them for twelve months and pay for what you sell for two months if you sell any, or at the end of twelve months pay for all you sell, and send the balance back to them, and, if you don't sell anything, send it all back.' I says, 'If I don't sell anything, I wont be out of anything then?' And he says, 'No.' When he said that I said, 'All right, then I'll take it then.' Then he brought out one of those contracts— I didn't think I was dealing with a thief either. He said his name was Jones—and I signed it, and the jewelry come to the express office, and he sent me six notes for me to sign, and I didn't sign them because I knew I would have to pay for them if I did. I wrote back then, and told them that I did not want them because the man represented to me that it would be such and such a way, different to what it was when it come, and I told them

I hadn't bought the stuff and did not want it, and that it was there subject to their order."

Dr. Davis, a witness for defendant, also testified on the subject as follows:

"Q. State the conversation you heard? A. The first time the gentleman came in that was selling the jewelry, Mr. Jones turned him down, and wouldn't buy. I don't remember the conversation had then, but he went down to the other store and failed to sell there and come back, and made him a proposition that if he would take the goods and put them in his house, and sell them, and report at the end of every two months the amount he sold, and keep his commission out and send him the rest, that he would only have to pay for the goods as he sold them, and pay every two months."

The testimony was not denied by the plaintiff, except in a general way, and the jury evidently believed the defendant and his witness, and refused to believe the story of the plaintiff. The answer set up a good defense of fraud and deceit in securing the execution of the contract sued on. The pleadings raised squarely a question of fact which was submitted to the jury under proper instructions by the court. There was, to be sure, a conflict in the evidence, but the jury, by its verdict, settled the issue in favor of the defendant, and it is a well-settled rule of this court that, where the evidence on a controlling issue or a material fact is conflicting, this court will not review the same to ascertain where the weight lies, but, if there is evidence reasonably tending to support the finding, the same will not be disturbed on appeal. *Hobbs v. Smith,* 27 Okla. 830, 115 Pac. 347, 34 L. R. A. (N. S.) 697; *Harrill v. Parkinson,* 27 Okla. 528, 112 Pac. 970; *Ellison v. Bank,* 27 Okla. 782, 117 Pac. 199; *Edwards v. Miller,* 30 Okla. 442, 120 Pac. 996.

The instructions offered by the defendant and which were refused by the court were properly rejected, in that they were not applicable, and did not state the law of the case. These refused instructions were offered under the theory that the evidence offered and admitted to prove fraud in the making of the contract was offered for the sole and only purpose of varying the terms of a written instrument. Such was not the purpose.

It is always competent to show by parol that a contract was procured by fraud and misrepresentation where such fraud and misrepresentation is pleaded and relied upon as a defense.

Finding no error in the record, the judgment of the county court of Jefferson county. should be affirmed.

By the Court: It is so ordered.