AMERICAN TRUST CO. *et al.* v. CHITTY *et al.*

No. 1993. Opinion Filed November 19, 1912.

Rehearing Denied January 7, 1913.

(129 Pac. 51.)

1. **WITNESSES — Examination — Privileged Communication—Attorney and Client.** In an action in conversion, where conspiracy is charged, it is not error to permit an attorney to testify that he had, long prior to the commencement of the action, advised one of the defendants that an abstract of title for certain land, over which the controversy arose, showed defective title; such evidence being offered, not as a legal opinion of the attorney, but to

show knowledge of bad title, on the part of the defendants; no objection being made that the conversation was privileged.

2.    **EXECUTORS AND ADMINISTRATORS** — Actions — Conditions Precedent—Presentation of Claim. A claim arising on contract must be presented to the administrator for allowance or rejection before suit can be maintained thereon, but not so where the claim arises in tort or other wrongful act of the deceased.

3.    **WITNESSES**—Competency—Testimony as to Transactions With Persons Since Deceased. It is error for a court to permit a witness to testify relative to a conversation had personally with a deceased person, where witness acquired title or cause of action immediately from such deceased person. Section 5841, Comp. Laws 1909.

4.    **APPEAL AND ERROR**—Review—Harmless Error. It is not every error occurring at the trial that will warrant the court in reversing the judgment of the trial court. This court in every stage of action must disregard error, where the substantial rights of the adverse party are not affected.

5.    **EVIDENCE**—Admissions—Acts and Declarations of Co-conspirators. In an action where several defendants are charged with conspiring and acting together with a common end and purpose in view, testimony of witness as to conversation and acts of one, relative to his relations with the other, is admissible as against all defendants.

6.    **SAME**—Parol Evidence Affecting Writings Showing Invalidity of Writing. Parol evidence is always admissible to show that a purported deed or other contract was not, in fact, the deed or contract made and entered into by the parties; the object being, not to vary the terms of a written instrument, but to show that by mistake of fact or fraud a different deed or contract was made than the one inquired about.

7.    **TRIAL** — Requested Instructions — Applicability. Requested instructions examined, and held not to state the law applicable to the facts in this case.
(Syllabus by Robertson, C.)

*Error from District Court; Garvin County;*
*R. McMillan, Judge.*

Action in conversion by M. A. Chitty against the American Trust Company and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*J. W. Hocker,* for plaintiffs in error.

*J. B. Thompson,* for defendant in error.

Opinion by ROBERTSON, C. Chitty, plaintiff below, charges in his petition that on February 5, 1907, the American

Trust Company, acting by and through its duly authorized agents, J. W. Gillett, F. P. Kibbey, and R. C. Hess, and the said J. W. Gillett, F. P. Kibbey, and R. C. Hess acting for themselves, and conspiring together with the said American Trust Company and with John M. Cavin, falsely and fraudulently represented to said M. A. Chitty that the said John M. Cavin was seised, and had an absolute and indefeasible estate in fee simple, in certain real estate in Garvin county; that said land had been filed upon as the surplus allotment of an intermarried citizen of the Choctaw or Chickasaw Tribes of Indians, with the exception of one twenty-acre tract; that said intermarried citizen disposed of said surplus· to said American Trust Company by warranty deed, and thât the said American Trust Company had disposed of said land to John M. Cavin by warranty deed, and that the perfect title to the said land was in the said Cavin except a mortgage in favor of one John Marsh in the sum of $1,700. It was further represented to said Chitty that said first-named parties had an abstract showing the above facts in detail, that they also had a release of the mortgage from said John Marsh, and that a warranty deed from John M. Cavin and wife would vest a perfect title to said land in the purchaser. Plaintiff, A. M. Chitty, relying on the·statements so made by said parties, and believing the same to be true, was induced to and did purchase said land from said Cavin and agreed to pay therefor the sum of $3,075, to be paid when the said the ·American Trust Company should secure a general warranty deed, accompanied by an abstract showing an absolute and indefeasible title in fee simple in the said John M. Cavin in all said land except the twenty acres as aforesaid, and the balance, to wit, $300, to be paid when the title to the twenty acres should be perfected; that, in accordance with the terms of said contract, the plaintiff deposited $3,075 with the American Trust Company, to be paid to the said John M. Cavin and the American Trust Company as their interests might appear upon the execution of the proper deed, accompanied by the abstract, showing such title as would vest the complete and indefeasible estate in fee simple in plaintiff. Plaintiff charges that immediately upon paying said money to the American Trust Com-

pany the said American Trust Company paid out to said John M. Cavin the sum of $1,575 of said money, and took and·converted to its own use $1,500 of said money; that said parties and each and all of them then and there well knew that said lands had not been filed upon as surplus allotment of an intermarried citizen of either Choctaw or Chickasaw Tribes of Indians; that they, and each of, them, well knew that the title to said lands had been questioned upon numerous occasions, and that said John M. Cavin, who had purchased said lands from the American Trust Company, had refused to pay for the same because of defective title. Plaintiff further charges that the said contract was further breached, in that no abstract of title was· ever produced by any of the parties showing that, with the exception of the twenty acres, as aforesaid, all of said land had been filed upon as surplus allotment of the Choctaw or Chickasaw Tribes of Indians, and that proper conveyance with covenants of warranty had been executed by said intermarried citizen, and that a good and indefeasible title was vested in said John M. Cavin, and that a deed containing proper covenants of warranty would convey to plaintiff a perfect title to said land; that without procuring any abstract at all the said defendants, immediately upon the deposit by plaintiff of the said sum of $3,075, acting together, took and divided and converted said money to their own use and benefit. Plaintiff further charges that, immediately after the making of said contract of purchase and depositing the money as aforesaid, he was informed that the title to said land was imperfect, and not as represented; that he immediately notified the said American Trust Company, J. W. Gillett, F. P. Kibbey, R. C. Hess, and John M. Cavin that he would not accept a deed to said land, nor pay for the same, nor consent that the money which he had deposited with the said American Trust Company should be paid out, because of his information that the title to said land was not good, and had been misrepresented to him; that he then and there immediately demanded a return of his money; that the said defendants and each of them have failed and refused to return the same, and ever since have held and converted the same to their own use and benefit; that since said

time, and in March, 1908, the defendant J. W. Gillett had died, and that Mrs. Mary P. Gillett had been appointed and was now the acting administratrix of his estate. The defendants and each of them answered by general denial. The defendant John M. Cavin answered separately by general denial, and, in addition, denied that he had acted wrongfully in and about the premises, or that he had acted in conjunction with said other named defendants, and alleged that prior to the time mentioned in plaintiff's petition he had purchased the land from the American Trust Company, but later had discovered a defect in the title to a part thereof, and had refused to complete the payments therefor; that at the request of the other defendants, and at the time mentioned in plaintiff's petition, he had agreed to reconvey said land by quit-claim deed to plaintiff, who was at the time present and heard their conversation; that he and his wife did execute a quit-claim deed to said land, and that if the deed conveying the same was a general warranty deed, as the American Trust Company now claim it to be, it was a forgery, as he had never executed such a deed; that immediately after the execution of said quit-claim deed the American Trust Company paid him the amount of money which he, before that time, had paid it for said land. The cause was tried to a jury, and a verdict in favor of plaintiff in the sum of $3,574.73 was returned, upon which judgment was entered, and to reverse which defendants bring this appeal.

Many assignments of error are raised in the petition in error, and presented by the brief of the plaintiffs in error. We will treat them in the order in which they appear. The first is:

"The court erred in the admission of the following testimony: Q. What did you tell him? What was your opinion as to whether the title was good or bad? A. Well, I advised him under that abstract that I didn't think the title to the land was good."

This testimony was elicited from Mr. Thompson, attorney for Chitty, who was questioned by Mr. Carr, attorney for Cavin, one of the defendants, but who had filed a separate answer. The purpose of such testimony as claimed by Chitty in his brief was to show that the defendants knew of the defect in title, and

that the same had been called to their attention, or at least to the attention of some of them, and that notice to one was notice to all under the charge of conspiracy as laid in the petition. Prior to the admission of this testimony, the other defendants had testified that they did not know of the defects of title. We are of opinion that the admission of this testimony was not error, under the circumstances. Mr. Thompson did not testify as an attorney giving a legal opinion, but as an ordinary witness of an independent fact, of a conversation had with one of the defendants, on a subject, the knowledge of which to any of the defendants was an important element in the charge of conspiracy. As such, the testimony was admissible. The trial court, perhaps, should have admonished the jury that this was the only purpose of the testimony, but the failure to do so, in the absence of a specific request for such limitation, will not warrant a reversal of the case. No objection was made that the conversation was privileged.

The next error assigned is that with reference to the action of the trial court in rejecting testimony offered by Mary P. Gillett, administratrix, as to her final discharge as such administratrix. J. W. Gillett, one of the defendants, died after suit had been instituted, and the action had been revived in the name of Mary P. Gillett, administratrix, etc. Defendants claim that this suit cannot be maintained as against the estate, for that no claim had ever been presented to the administratrix as is required by law, and that the same is therefore now barred by statute. This contention might be good were this a debt or claim arising out of a contract, but, being for conversion, a claim arising out of a tort or wrong, no such presentation is necessary. Our Code on this subject is identical with the California Code, and 1 Church on Probate Law and Practice, p. 735, says:

"As the statute which relates to the presentation of claims against estates before actions can be maintained thereon relates to claims arising on contracts, other actions do not come within the rule. Thus no presentation of a claim is necessary before the bringing of an action to recover damages for wrongful acts."

See, also, *Hardin v. Sin Claire,* 115 Cal. 460, 47 Pac. 363. We can see no error in the ruling of the court on this subject.

The third ground urged for reversal is that the court permitted plaintiff to testify of and concerning a conversation had with deceased, Gillett, one of the original defendants. Timely objection to the reception of this evidence was made by counsel for defendants, but the objection was overruled, and the witness was permitted to testify as follows:

"A.  Mr. Gillett said that he would be willing that any lawyer in this territory or state should pass on this title, excepting Mr. Thompson, and he wouldn't object to him, but he was an enemy of his; that Mr. Thompson thought he was pretty smart, but that he thought there was other men just as smart as him in the territory."

The record discloses that this conversation occurred at a meeting between the officers of the American Trust Company and Chitty, at which time the question of the title to the land in controversy was under discussion.  Mr. Hess, one of the defendants, in answer to a question concerning the examination of the abstract, said, as testified to by Chitty, "that the American Trust Company would be willing to have me have any lawyer in the state or territory to pass upon the abstract, excepting J. B. Thompson, and they would not object to him only he was an enemy of theirs."  At this point the objection above noted was made by Mr. Hocker as follows:

"I don't think he can detail such conversation with Mr. Gillett.  The Court:  You want to prove what Mr. Gillett said at that time?  Mr. Thompson:  Yes; just what he said as to the land."  (Objection overruled, defendants except.)

Whereupon the witness Chitty testified as above with reference to a conversation had personally with Mr. Gillett, deceased.  The admission of this testimony was error.  Section 5841, Comp. Laws 1909, provides:

"No party shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where they have acquired title to the cause of action immediately from such deceased person, etc.  *  *  *"

However, it will be noted that the same conversation had

taken place between Mr. Hess, one of the defendants, and the witness Chitty, and had been given in detail just before the testimony complained of was given.

The evidence of the conversation had between Chitty and Hess was competent, and, while that between Chitty and Gillett was incompetent, it was error of such character that this court would not be justified in interfering with the verdict of the jury on that account.

"It is not every error occurring at the trial that will warrant the court in reversing the judgment of a trial court. This court in every stage of action must disregard error, or defect in pleading or proceeding, which does not affect the substantial rights of the adverse party." (*Yukon Mill & Gr. Co. v. Imperial Roller Mills.*, 34 Okla. 817, 127 Pac. 422).

It is next objected that the court erred in permitting plaintiff to testify as to a conversation had with Mr. Hess, one of the defendants, relative to his relation with the American Trust Company, thus:

"A. Mr. Hess said he was representing the American Trust Company, etc. Mr. Hocker: I don't know about the declarations of the agent to prove an agency. I move the court that the statement be stricken from the record and the jury instructed not to consider it. By the Court: (Overruled. Exceptions.)"

There is no error in this ruling of the court. Hess was one of the defendants in the action. The allegations of the petition charge the defendants with conspiracy in that they all acted together, jointly, and with a common end and purpose in view. Such being the case, the testimony was competent to show how Hess acted, or claimed to act, in order to prove a joint tort.

It is next urged that the court erred in permitting the defendant Cavin to testify as follows:

"Q. I will ask you if that was a quitclaim deed or a warranty deed? A. It was a quitclaim deed. We only agreed in the deed we signed to defend against those claiming it, through, or under us. Mr. Hocker: I move the court to exclude from the jury that portion of the deposition of J. M. Cavin that seeks to vary the terms and the written deed by parol. (Overruled. Exceptions.)"

It is charged in Cavin's separate answer that he was to quit-

claim the land; that he refused to make a warranty deed.  This testimony by Cavin is in support of the allegations of his answer, and is offered by one of the defendants in the action.  He was testifying as to a fact clearly within his knowledge.  It could have been shown on cross-examination that he was mistaken. The original deed was, in fact, offered in evidence by defendants, and examined by the jury.  The objection that the testimony attempts to vary the terms of a written instrument is not good.  Parol evidence is always admissible to show that the purported contract was not, in fact, the contract made and entered into by the parties; the object of such testimony being, not to vary the terms of the written instrument, but to show that by mistake or fraud a wholly different instrument was made and executed.  For this purpose, and this alone, such testimony was competent.  *Colonial Jewelry Co. v. Jones, post,* 127 Pac. 405.

It is also urged that the court erred in refusing to give the following requested instruction:

"(a)  The jury are instructed that the allotment of a deceased member of the Choctaw-Chickasaw Tribe of Indians may be sold by the heirs of such allottee immediately after selection and prior to the issuance of allotment certificate or patent."

As a general proposition of law the above is correct.  *Hancock v. Mutual Trust Co.,* 24 Okla. 391, 103 Pac. 566.  The trouble with this instruction is that it does not apply to the admitted facts in this case.  In the case at bar there were several different tracts of land with many different heirs, some not determined. It is impossible to ascertain from the record the names and ages of the so-called heirs.  If the heirs were all determined and were all of age, the above instruction might, and doubtless would, be the law of the case on that particular point.  The surplus of a deceased Indian was not subject to be sold prior to April 6, 1906, and since then only by approval of the deed by the Secretary of the Interior, or some probate court having jurisdiction of the estate of the deceased.  *Mullen v. U. S.,* 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834.

The next instruction complained of is as follows:

"The jury are instructed that, upon the death of a member of the Choctaw-Chickasaw Tribe of Indians, if such allottee dies

without issue and unmarried and without a will, his lands and allotment go to his father and mother, or one of them, if living, and such father and mother may sell the same, and convey good title to the purchaser."

What has been said with reference to instruction "a" above may be said of this instruction also. The case of *Shulthis v. Mac-Dougal* (C. C.) 162 Fed. 331; does not apply to nor govern in this case, for there is nothing in the record to show when the land was allotted or when the allottee died, whether before or after allotment. If the allotment had been made before the allottee died, the surplus would have been alienable by the heirs, but no showing to this effect is made by the record in the case, hence the refusal of the court to give this unqualified instruction was not error.

It is next urged that the court erred in refusing to give the following requested instruction:

"The jury are instructed that if lands are selected in the name of an enrolled Indian, and after selection such lands are sold to an innocent purchaser, the fact that the Secretary of the Interior canceled the name of such enrolled person from the Indian rolls, and canceled the allotments of lands, cannot affect the title to such lands in the hands of innocent purchaser."

This instruction does not state the law applicable to the facts in this case, and the authority of *Sorrels v. Jones et al.*, 26 Okla. 569, 110 Pac. 743, cited by the learned counsel for plaintiffs in error does not sustain, but, on the contrary, defeats such contention.

The next two assignments of error, being requests for peremptory instructions in favor of defendants Hess and Kibbey, do not require any consideration at our hands, for the reason that this was an action in conversion on account of the wrongful acts of defendants, and not one for rescission of contract, and, while the expressions found in the petition are not as carefully worded as they might have been, yet, as a whole, it fairly states a cause of action in conversion by conspiracy, and it was upon this theory that the case was tried by the parties to the court below.

The next two assignments refer again to the failure of plaintiff to present his claim to the administratrix for allowance. This has been completely disposed of hereinabove, and needs no further consideration.

This observation also applies to and controls us in the determination of assignments of error "j" and "k."

Assignment of error "h," as urged by plaintiffs in error, deals with a refused instruction, the substance of which is given by the court on pages 215 and 216 of the record, and evidently overlooked by counsel.

Assignment in error "i," as predicated upon the failure of the court to give the following instruction:

"The jury are instructed that no warranty of title can be had by mere verbal statement as to the title, or even language expressing a warranty of title, and therefore, before you can find against the defendants Kibbey and Hess, or the American Trust Company, or the estate of Gillett, deceased, by reason of a statement of warranty, standing alone, you must find that such warranty was evidenced by writing, for no man may be held to answer the default or miscarriage or upon the guaranty of obligation of another, except such promise be in writing."

There was no error in refusing this instruction, for this is not an action on guaranty or on contract, but on tort as has hereinbefore been pointed out. As was well said by counsel for defendant in error, the evidence of title was not offered for the purpose of proving verbal warranty or guaranty, but was offered and admitted for the sole and only purpose of showing fraud and conspiracy. Hence the court did not err in refusing the offered instruction. The case was tried on a wholly different theory.

Assignment of error "l" is based upon the failure to instruct as to the law on deceit, and for the reasons last above given was inapplicable to the facts of this case, and should not have been given.

The same observations apply also to errors "m," "n," and "o."

The record is full of objections of one kind and another, upon every one of which error has been predicated by the

voluminous brief of learned counsel. But, as has been seen, these objections are trivial, and based largely upon a misconception of the theory upon which this case was tried in the lower court. To our mind ·the case presented a simple question of conversion of money. Counsel insists all the way through his able brief that the cause of action was purely equitable, and was for rescission of contract, on the ground of fraud and deceit. The objections, with one exception, are without merit. The court did err in permitting witness Chitty to testify with reference to a conversation had personally with Gillett, deceased, but, as has been pointed out, this evidence, although improperly admitted, tended to prove what in·fact was an immaterial issue. The case could, and in our opinion would, have been decided as it was, had this testimony been wholly omitted. It will also be remembered that the witness testified in the same connection as to the same conversation had with defendant Hess, and the information thus properly derived was presented to the jury, in the form of competent evidence. We would not, under all the facts and circumstances of this case, with a full knowledge of the issues raised by the pleadings, be warranted in disturbing the judgment entered by the trial court on account of this slight error, nor do we feel disposed to interfere. On the contrary, from a careful review of the entire record, we are of opinion that substantial justice was done by the verdict of the jury, and that the judgment of the district court of Garvin county should in all things be affirmed.

By the Court: It is so ordered.