## UNCLE SAM OIL CO. v. RICHARDS et al.

No. 4916—Opinion Filed Oct. 14, 1919.

Rehearing Denied Nov. 25, 1919.

(Syllabus by the Court.)

1. **Oil and Gas—Option—"Completion of Well."**

The words "after the completion of a well," as used in the option contract involved herein, are words of plain meaning and significance.

2. **Same.**

Record examined and held: That giving these words their ordinary meaning, the uncontradicted evidence shows that the well involved in this action was completed on the 28th day of November, 1912, after it had been successfully shot and commenced flowing oil in large quantities.

Error from District Court, Pawnee County, L. M. Poe, Judge.

Action by the Uncle Sam Oil Company against A. M. Richards and others. From judgment for defendants, the plaintiff brings error. Reversed and remanded.

Albert L. Wilson and Mark T. Wilson, for plaintiff in error.

Dillard & Blake, for defendants in error.

KANE, J. This was a suit in equity commenced by the plaintiff in error, plaintiff below, against the defendants in error, defendants below, for the purpose of enjoining and restraining two of the defendants from assigning a certain oil and gas lease and all the defendants from entering upon the leased premises or otherwise interfering with the development and control thereof by the plaintiff. Hereafter, for convenience, the parties will be designated "plaintiff" and "defendants," respectively, as they appeared in the trial court.

After the petition was filed the trial court granted a temporary injunction as prayed for, which was dissolved upon final hearing and a decree entered in favor of the defendants. It is to reverse this action of the trial court that this proceeding in error was commenced. As the only question necessary to notice turns upon an examination of the evidence, no detailed statement of the issues joined by the pleadings is required. The record shows that the evidence, over which there is no sonflict, establishes the material facts to be substantially as follows:

The defendant Richards was the owner and holder of two oil and gas leases covering the north half of a certain section of land which he had been holding without drilling for about two years prior to the execution of the contracts with the plaintiff, which form the basis of this action; that prior to August 12, 1912, the defendant Richards conveyed an undivided one-eighth interest in said leasehold to the defendant Blake; that on the 28th day of August, 1912, Richards and Blake, being desirous of having their leasehold tested for oil and gas, assigned one of said leases to the plaintiff, by the terms of which assignment the Uncle Sam Oil Company, the plaintiff, obligated itself to go upon said premises and complete a well thereon for oil and gas to the Bartlesville sand within sixty days or pay to said Richards and Blake the sum of $4,000, and on the same day Richards and Blake also executed an option contract covering the northwest quarter of said section, which contained the following provision:

"It is understood and agreed that the said the Uncle Sam Oil Company shall have the rights and privileges under this option for a period of thirty days (30) after the completion of a well by the said the Uncle Sam Oil Company, on the said southeast quarter of the northwest quarter of section nine, township twenty north, range eight east, I. M., in Pawnee county, Oklahoma, and it shall pay one-half of the purchase price of said lease and leasehold, the sum of two thousand dollars ($2,000.00) and shall have ninety (90) days from the date of the first payment in which to pay the balance or two thousand dollars ($2,000.00) the said sum of four thousand dollars ($4,000.00) being the amount to be paid in full for said lease and leasehold."

After the execution and delivery of these contracts the defendant William Blake assigned to the plaintiff his undivided one-eighth interest in the northwest quarter of said section. Immediately after the delivery of these instruments the plaintiff went into possession of the leased premises and commenced to drill a test well in strict compliance with the terms of its contract, reaching the Bartlesville sand on the 28th day of October, 1912; and at this depth, on the 31st day of October, the well commenced flowing oil and water to the amount of seventy barrels per day, which was kept blown out of the well by a strong pressure of natural gas which caused the oil and water to blend in such combination as to produce a valueless substance known in the oil business as "B. S." At this point the well was plugged and thereafter successfully shot, and on the 27th day of November following it commenced flowing oil at the rate of eight hundred barrels per day. It is not charged that there was any bad faith or lack of diligence on the part of the plaintiff in its efforts to comply with the terms of its option contract with Richards and Blake, the sole question in the case being, When, in these circumstances, was the well completed? The plaintiff contends that it was completed on the 28th day of November, 1912, after it had been successfully shot and commenced flowing oil in large quantities. On the other hand the defendant contends that the well was completed on the 28th day of October, 1912, when the Bartlesville sand was reached. If the first contention is sustained, it is conceded that the plaintiff strictly performed the conditions of its option within the time stipulated and should prevail; and that if the second contention is sustained, the defendants must prevail. We think there is but one reasonable answer to the question thus presented and that is that the well was completed on the 28th day of November, 1912, when it was successfully shot and commenced flowing oil in large quantities.

It is obvious that the parties entered into

the contracts hereinbefore referred to for the sole purpose of testing the leasehold involved for oil and gas. It was assumed that completing a well to the Bartlesville sand would be adequate for this purpose, and so it was. Drilling to the Bartlesville sand demonstrated at once that the leasehold contained both oil and gas, but the mere drilling to this depth did not determine whether these substances could be produced in paying quantities. The well, as we have seen, commenced flowing oil and water, which was being blown out by such a strong pressure of natural gas as to produce a valueless substance known as B. S. At this period it was impossible to say whether the well would prove to be a paying gas well, an oil well, or a dry hole. Obviously it was still incumbent upon the plaintiff to do something else in order to complete the well to a point where it could be determined to which of these classes the well belonged. This the plaintiff did in the concededly approved manner for doing such work in that field, with very satisfactory results. In the circumstances, no good reason appears for giving the words "completion of a well" or the word "complete" any peculiar meaning or significance. Webster's New International Dictionary defines "completion", the word used in the option, as follows: "Act or process of making complete." The same work defines the word "completed" as follows: "Filled up with no part, item, or element lacking; free from deficiency; entire; perfect; brought to an end; a final or intended condition; concluded; completed." For judicial definitions see 2 Words & Phrases, 1366. Giving these words their ordinary meaning we are fully convinced that there is not a particle of evidence in the record sustaining the conclusion of the trial court. that the well was completed, that is, that it was brought to an end, or to a finish, or an intended condition on the 28th day of October, 1912. The briefs of counsel disclose some controversy as to the rule which should govern this court in examining the evidence, that is, whether the rule applicable to suits in equity or the rule applicable to actions at law should be applied. We think this is immaterial. In our judgment there is no material conflict in the evidence and no evidence whatever which, in either event reasonably tends to sustain the conclusion reached by the trial court.

For the reasons stated, the judgment of the court below is reversed and the cause remanded, with directions to enter judgment in favor of the plaintiff.

All the Justices concur, except McNEILL, J., not participating.