AUTOMOBILE INS. CO. v. LEWIS.

No. 12482—Opinion Filed Oct. 23, 1923.

Rehearing Denied Nov. 27, 1923.

1. Sales—Vesting of Title—Delivery for Inspection.

If after agreement between parties as to the consideration for the purchase price of personal property, the property is delivered to the prospective purchaser for the purpose of using for a short while in order to determine the condition of the property, and the final sale is made to depend on the condition in which the vendee shall find the property, the title to the property does not pass until final acceptance by the vendee.

2. Insurance—Fire Policy—Title to Personalty.

If, during such use and trial of the property, the property is covered by a fire insurance policy issued to the original owner insuring against loss by fire, and the property is destroyed by fire, it will not defeat the insured's right to recover on the policy.

3. Appeal and Error—Questions of Fact—Verdict.

On appeal to this court the judgment will not be reversed for insufficiency of evidence to support the verdict of the jury if there is any testimony that reasonably tends to support the verdict.

4. Assignments—Cause of Action or Judgment—Requisites.

The proceeds of a cause of action or judgment on a written contract must be assigned in writing in order to constitute a valid assignment, so that the judgment when satisfied by the defendant will operate as a bar to another action upon the contract against the defendant.

5. Parties—Substitution of Assignee of Cause of Action.

The trial court is not warranted in substituting the assignee of such cause of action in lieu of the plaintiff on an oral agreement.

6. Appeal and Error—Harmless Error—Substitution of Parties.

If, however, the real party in interest brings the action and the cause proceeds to trial and completion, and the jury is correctly instructed on the issues between the parties and the court of its own motion substitutes the assignee resting on a parol agreement without objections on the part of the real party plaintiff, who is present in court prosecuting the cause, the error is technical and therefore harmless.

7. Same.

The error is technical and harmless for the reason that the real party plaintiff would be estopped to question the rendition of judgment in favor of his assignee resting on the parol agreement in a subsequent action on the insurance policy, or in the attempt of any person to question the payment to the substituted plaintiff.

8. Same — Judgment — Sufficiency of Evidence.

Record examined, and held to be sufficient to support the judgment rendered on the insurance policy in favor of the plaintiff.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Pittsburg County; Harve L. Melton Judge.

Action by W. S. Sanders, for whom John H. Lewis was substituted as party plaintiff in the course of the trial, against Auto-

mobile Insurance Company of Hartford, Conn., for recovery on automobile fire insurance policy. Judgment for plaintiff. Defendant brings error. Affirmed.

Moore & Harries, for plantiff in error.

C. C. Null, for defendant in error.

Opinion by STEPHENSON, C. W. S. Sanders purchased an Essex automobile in the first days of March, 1919, from John H. Lewis, of Hartshorne. The car was paid for, in part, by notes and mortgage to the First State Bank of Hartshorne. The mortgage was filed for record in the office of the county clerk of Pittsburg county, on March 7, 1919, and bore serial number 3103. On March 10, 1919, the defendant issued its fire insurance policy on the car in question to the plaintiff for $1,000. The insured made the representation that the car was the property of applicant and free from all incumbrances. The terms of the policy provided that a misrepresentation in either respect by the insured would invalidate the policy. The policy further provided that in the event of loss by fire the insured should make proof of loss within 60 days from the date of the loss. John H. Lewis was the cashier of the bank to which the notes and mortgage were executed and delivered. The automobile was destroyed by fire on July 18, 1919. The insurance company refused to pay the loss and the insured commenced his action against the company for recovery on the policy. The plaintiff alleged the performance of all conditions upon his part and the furnishing of proof of loss within the required time. After the completion of the introduction of all the evidence in the case and the court's instruction to the jury, including several special instructions requested by the defendant, the court, on its own motion, substituted John H. Lewis as party plaintiff for W. S. Sanders. Judgment went for plaintiff, and the defendant brings error to this court urging reversal on the following grounds: (a) Insufficiency of the evidence to support the verdict of the jury; (b) error of the court in substituting John H. Lewis for W. S. Sanders as plaintiff.

There is considerable testimony offered in evidence concerning the ownership of the car at the time of the loss, on the part of both Lewis and Sanders. Sanders testified that he met Lewis on the streets of McAlester about 10 o'clock in the evening, some few days prior to the loss of the car. Lewis advised him that he was contemplating purchasing an automobile. Sanders advised him that the car which he had purchased from him was practically in as good condition as when purchased, and that he would like to sell the car to him. The notes given the bank on the car were yet unpaid, and Sanders advised Lewis that he did not require the use of the car to any great extent, and would like to make the sale of the car to him. It appears that Lewis contemplated making a trip across the country in a few days, and from the testimony of both parties it appears that it was the understanding between them that Lewis should then take the car and use it in making the trip in order to determine its present condition. It was further agreed that Lewis should place $400 in the First State Bank of Hartshorne, as a guarantee that Lewis would either purchase the car if it appeared to be in good condition, or, if not, return the car to Sanders after making the trip. If Lewis decided to take the car the latter was to pay the notes at the bank, thereby releasing Sanders. While Lewis was driving the car on the trip it burned. Lewis testified that, inasmuch as he had agreed either to purchase the car if he found it in good condition or return the same to Sanders after making the trip, he ought to in all fairness to the owner take care of the indebtedness to the Bank, and pay the $400 guarantee to Sanders. It appears that it was further understood between the parties that, inasmuch as Lewis was making good his agreement in the first instance, Sanders would pay to Lewis the proceeds of any settlement or compromise on the insurance policy. Lewis then commenced paying the notes due the bank. On cross-examination of Sanders by the defendant he was asked if he did not give a mortgage on the car to the bank about the 1st of March, 1919, to which the witness answered in the affirmative. He was then asked if the mortgage was on the car at the time the fire insurance policy was issued to him. The witness answered, in substance, that after executing the mortgage to the bank, the question of carrying insurance on the car arose. It appears that Lewis, who was cashier of the bank, also owned an interest in the Essex automobile agency at Hartshore. The agent of the defendant at Hartshorne carried the insurance on the cars for the Essex sales agency. The matter of the existence of the mortgage on the car was discussed among the parties, and in order to meet the terms of the policy it was agreed that the bank should release its mortgage on the car, which was accordingly done. The release was not placed of record. The witness Sanders was asked on the witness

stand if he had the release. It appears that the witness had the release with him, which was submitted to the attorneys for the defendant, who discovered that it was dated with a rubber stamp as of March 5, 1920. The witness further testified under cross-examination that the bank agreed to release the mortgage at the time the release was delivered to him, and that the release was delivered to him prior to the issuance of the insurance policy. Lewis testified to the same facts, and in answer to a question of the attorneys for defendant, stated, in relation to the date that the release bore, that the figures of the dater might have been misplaced at the time of stamping the date on the release. He was positive, however, that the mortgage was released prior to the issuance of the policy, as the mortgage was released for the purpose of meeting the requirements of the fire insurance policy to be issued on the car. After both plaintiff and defendant had closed their case the court called each of the witnesses back on the stand to make clear some phases of the evidence. The court again questioned both witnesses closely in relation to all the matters relating to the mortgage, release, and policy. The witnesses appeared to make free, clear and frank answers to the questions of the court. The defendant contends that the fact that the release bore the date of March 5, 1920, and also the serial number of the chattel mortgage filed for record on March 7, 1919, should preclude consideration of the evidence of the witnesses on the question of the release of the mortgage prior to the issuance of the insurance policy. We cannot go so far. as it is the duty of the trial court to submit all disputed questions of fact to the jury under proper instructions. It is for the jury to weigh the evidence and consider the weight to be given the evidence in the light of all circumstances surrounding the case. There was an opportunity for error in the rubber stamp date on account of misplacement of the figures in the dater. There was opportunity for the release to have been executed between the 7th and 10th of March, 1919, and thereby carry the serial number of the chattel mortgage. Also opportunity for the serial number to have been placed on the instrument at a later date, as the release appears to have been in the possession of the parties at all times. All these matters in connection with the evidence of the case were for the consideration of the jury. The jury returned a verdict for the plaintiff. The trial court in considering a motion for new trial, in overruling the motion, thereby approved the verdict of the jury. The jury, after hearing all of the evidence, with the opportunity of studying the manner and demeanor of the witnesses while testifying, and considering the interest of the witnesses shown in the outcome of the trial, has returned its verdict for the plaintiff. The presiding judge, who conducted the trial and heard the evidence, by overruling motion for new trial, has placed his approval on the verdict. In considering the question of the insufficiency of the evidence to support the verdict of the jury and judgment of the court, the rule is that if there is any testimony that reasonably tends to support the verdict of the jury, the cause will not be reversed for want of evidence to support the judgment. Gayer v. Pearce, 86 Okla. 102, 206 Pac. 822.

After the introduction of all the evidence and instructions to the jury on the issues joined between the plaintiff W. S. Sanders and the defendant, the court upon its own motion substituted John H. Lewis for the plaintiff, and gave the following additional instruction:

"Gentlemen of the jury, John H. Lewis has been substituted as party plaintiff in this cause since preparing the above instructions. You are therefore instructed if you find from a preponderance of the evidence that since the loss of said automobile, and since the bringing of said suit, to wit, November 20th, 1919, John H. Lewis has paid the former plaintiff, W. S. Sanders, for said car or assumed the notes in question so as to render said Sanders not liable thereon, and thereby indemnifying him against any loss by reason of the destruction of said car, then your verdict should be in favor of said substituted plaintiff, John H. Lewis, instead of the former plaintiff, W. S. Sanders. provided you have found under the above instructions the defendant is liable for the loss of the car."

The court substituted John H. Lewis for the plaintiff Sanders evidently on the theory that the oral agreement between the parties that Lewis would pay the indebtedness of Sanders due the bank for the proceeds of the suit on the policy operated as an assignment of the cause of action to John H. Lewis. The oral agreement was ineffective to assign the cause of action instituted by plaintiff to John H. Lewis. However, if Sanders had a cause of action against the defendant on the insurance policy, Sanders could have assigned the proceeds of the action to Lewis by sufficient writing filed in the cause, or noted on the judgment docket after the rendition of judgment in favor of plaintiff. The

written assignment from the plaintiff to John H. Lewis, filed either in the cause or recorded on the judgment docket, would have protected the defendant in satisfying the judgment in any further action that might have been instituted on the insurance policy. The defendant does not contend that the payment of the notes to the bank under the agreement between the parties was for the benefit of the defendant or in satisfaction of the loss owed by the defendant. The question for determination in this cause is whether or not W. S. Sanders owned the title to the property at the time of its loss. The verdict of the jury carried a finding on this question in favor of W. S. Sanders. Any agreement entered into between Sanders and Lewis thereafter could not affect the question that Sanders held an insurable interest in the property at the time of its loss, and was entitled to recover for the loss. Any agreement or payment that was not made or paid for the benefit of the insurance company in settlement of its liability on its policy cannot affect the question of defendant's liability in this cause. The oral agreement between Sanders and Lewis for the assignment of the proceeds of the action to Lewis was insufficient in law to operate as an assignment of any rights, but as the party entitled by the term of the contract to recover commenced his action against the defendant and was then in court and did not object or except to the action of the court in substituting John H. Lewis as party plaintiff, W. S. Sanders will be estopped thereby in questioning the validity or regularity of the action of the court in the matter of substitution. The estoppel will protect the defendant in the payment of the judgment rendered in this cause in any further action that might be had on the policy. Therefore the error is technical and harmless. The court having instructed the jury on the liability and questions for consideration between W. S. Sanders and the defendant, prior to the substitution of the party, the instructions as given by the court, when considered with the other instructions fairly submitted the questions of fact to the jury and the defendant did not suffer any injury by reason of the substitution. Diamond v. Inter Ocean Newspaper Co., 29 Okla. 323, 116 Pac. 773; Hertzell v. Weber, 31 Okla. 5, 120 Pac. 589; American Trust Co. v. Chitty, 36 Okla. 479, 129 Pac. 51.

It is therefore recommended that the judgment of the court be affirmed.

By the Court: It is so ordered.