**TWIN STATES OIL CO. v. WESTERLY OIL CO. et al.**

No. 12459—Opinion Filed Nov. 27, 1923.

**1. Oil and Gas—Drilling Contract—"Completion of Well."**

The term "completion of well," for the purpose of operating and testing for the amount of production as used in a drilling contract, means the cleaning of the well after reaching the specified depth, so that the sand reached may give that flow of production by its own force or by pumping which would result from a well so prepared in the ordinary and usual manner for making preparation for such test.

**2. Same—Action on Contract by Driller—Jury Question.**

Under a drilling contract between parties providing, if there is "some production" found after the completion of the well, the plaintiff should have 30 days thereafter in which to operate and test the well to determine whether the driller desires to retain the well on the production shown, or tender the well to the defendant for the exercise of the option of the contract for the payment of certain sums of money to the plaintiff on the tender, if a dispute arises be-

tween the parties as to the date of the completion of the well in determining whether the tender was made within the 30 day time after completion, the date of completion becomes a question of fact for submission to the jury.

**3. Appeal and Error—Question of Fact—Verdict.**

If there is any competent testimony reasonably tending to support the verdict of the jury, the judgment will not be reversed on appeal for insufficient evidence.

**4. Same—Harmless Error.**

Errors occurring in the course of the trial which do not affect the substantial rights of the party against whom the verdict goes, thereby become and are technical errors, and the judgment will not be reversed on this account.

**5. Same—Affirmance.**

Record examined, and held to support the verdict of the jury.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Washington County; Charles B. Wilson, Jr., Judge.

Action by the Twin States Oil Company, against the Westerly Oil Company, and Tahlequah Gas Company, for breach of contract. Judgment for defendants. Plaintiff brings error. Affirmed.

W. J. Gregg, for plaintiff in error.

Rowland & Talbott and Burdett Blue, for defendants in error.

Opinion by STEPHENSON, C. The plaintiff commenced its action in the district court of Washington county against the defendants for the alleged breach of a drilling contract. The contract sued on is in substance:

(1) That the plaintiff should drill a well to the Bartlesville sand, unless oil or gas was found at a less depth, on a tract of land owned by the plaintiff. Each of the defendants owned an adjoining lease.

(2) It was provided that if the well to be drilled proved to be a dry hole, each of the defendants would immediately pay to the plaintiff the sum of $5,000.

(3) It was further provided that if the well produced some oil or gas, the plaintiff should have 30 days after its completion in which to operate and test the well.

(4) If during the 30 days test the plaintiff should elect, it might tender to the defendants the well with its production, and the defendants might elect to exercise one of the two options: (a) Pay to the plaintiff the sum of $10,000, and permit the plaintiff to retain the well and lease surrounding the well; (b) or pay to the plaintiff the expense of drilling the well based on $3.50 per lineal foot and take the well and 10 acres of the lease surrounding the well. Under the terms of the written contract between the parties the plaintiff might have tendered the well to the defendants, even though the well had been of paying production. However, we do not assume there would have been any controversy between the parties in the latter event. In drilling the well the law imposed on the plaintiff the duty of exercising ordinary efforts in drilling the well to completion. Under the contract the defendants could not refuse the tender of the well, except on the following grounds: (a) The plaintiff's negligence in drilling the well, which resulted in a failure to give the defendants the benefit of a reasonable test of their adjoining property: (b) that the well was drilled in with production which was thereafter substantially reduced by negligence in handling by the plaintiff; (c) that the plaintiff failed to notify the defendants of its election to tender the well to the defendants within the 30 day period after the completion of the well. The plaintiff, for its cause of action, alleged that it drilled in the well with ordinary and usual care, and that it elected within the 30 day period of operation and test, after the completion, to tender the well to the defendants, and so notified the defendants, who refused to exercise either of their options as above set forth. So the plaintiff seeks recovery of the defendants in the sum of $5,000 each. The defendants, by way of answer, denied generally the allegations of plaintiff's petition, and further answered that the plaintiff brought in paying production, and by negligence in the handling and operation of the well thereafter destroyed it. As a further defense, the defendants allege that the plaintiff did not elect to tender the well to the defendants and notify them of such tender at any time within the 30 day period of operation and test after the completion of the well. The contract did not require the drilling of the well in any given period of time; however, the law imposed the duty on the plaintiff to exercise ordinary efforts in its completion. The defendants testified that the plaintiff commenced and drilled the well to a point near the Skinner sand, where the six inch casing was set. It appears from the evidence that the plaintiff found about a seven barrel production in the Skinner sand. A 5 3-8 string of casing was then run and drilling continued to the Bartlesville sand. The well was drilled to a depth of 38 feet in the Bartlesville sand. The water was cased off in the upper strata and did not make its appearance in the well

until the depth last mentioned had been reached. A plug was put in the bottom of the well and other measures taken to prevent the water from flowing into the well. It was then swabbed for the purpose of removing the water, which did not reenter for the time being. It appears that in the swabbing process the 5 and 3-8 inch pipe was broken which let the water in from above on account of the six inch pipe previously set becoming jarred loose or permitting the water to flow under its base into the well. After considerable effort it appears that the water which entered from the bottom of the well and through the broken casing was shut off. The well then again showed about a seven barrel production. It was alleged by the defendants that the water settling into the bottom of the well pressed the oil back through the sand and lessened production. The terms of the contract provided that the plaintiff might shoot the well at the expense of the defendants. A shot was placed in the bottom of the well which failed to increase the flow of oil. Later a shot was made in the Skinner sand without resulting in additional flow of oil. About October 4th, the plaintiff notified the defendants to exercise their election under the contract, which they failed and refused to do. Some controversy occurred between the parties and the plaintiff advised the defendants by letter that it had completed the well about July 14th. There was considerable evidence introduced on the part of the defendants as to the proper manner of setting the six inch casing and the handling of the well in general. The negligence charged by the defendant in reducing the flow of oil was its handling and operating after reaching the Bartlesville sand. The testimony relating to the setting of the six inch pipe above the Skinner sand was relevant only in the event that the breaking of the five inch pipe in the swabbing of the well was no negligence or rather presented a question for the jury to pass on. If the evidence tended to show that the setting or seating of the six inch pipe above the Skinner sand was negligently done, and the swabbing process was also negligently done, the two acts were proper to be considered together under the allegation of defendant's answer that production was impaired after completion of well by the negligent operation on the part of the plaintiff. However, the evidence does not show that the production from the Bartlesville sand was less than previous production in the Skinner sand. The court would not be warranted in concluding that the settling of the water in the bottom of the well lessened the flow of oil, unless a greater number of barrels had previously flowed from the well.

All this evidence in view of the amount of production being about equal in both instances, could only go to the question of the plaintiff exercising ordinary care in drilling a well that would ordinarily produce oil, if it struck an oil producing sand. The performance of this duty rested upon the plaintiff in carrying out its contract as a matter of law. At this point there were only two questions for submission by the court to the jury: (a) Whether or not the plaintiff had exercised ordinary care in drilling the well in question; (b) Did the plaintiff tender the well to the defendants under the provisions of the contract within the 30 day period of time after completion? The court properly instructed the jury on the first question. In submission of the second question the court gave the following instruction in defining what constituted the completion of the well:

"One of the facts for your determination in this case is, when, if ever, said well was drilled to the point of completion; and you are advised and instructed that by the expression, 'completion of the same' as that term is used in contemplation of the contract involved in this action, it meant the drilling of a well to what is known as the 'Bartlesville sand,' and putting the same in such condition that a fair and reasonable test of its productive capacity could reasonably have been commenced."

The instruction is approved as it properly defines what is meant by the term "completion of a well." Uncle Sam Oil Co. v. Richards, 76 Okla. 277, 184 Pac. 575. The court then instructed the jury that in order for the plaintiff to be entitled to recover, it must show by a preponderence of the evidence that it tendered the well to the defendants under the terms of the contract within the 30 day period after its completion.

The plaintiff's letter to the defendants that it had completed the well on July 14th, when considered in the light of other evidence in the cause, made the matter a question of fact for submission to the jury. After the well had been completed to the Bartlesville sand and swabbed and tested for production, the plaintiff later returned and shot the Skinner sand. A shot had been previously made in the Bartlesville sand. Whether the shooting of the Skinner sand and the other acts done about the well were included within the term "completion of the well" for testing purposes or coupled with the other evidence constituted an election upon the part of the plaintiff to retain the well, after the expiration of the 30 day period for operation and test, were questions of fact for submision to the jury on the question of plaintiff's tender of the proper-

ty to the defendants within the terms of the contract.

The jury returned its verdict for the defendants which carried a finding of fact against the plaintiff on these questions. If there is any testimony that reasonably tends to support the verdict of the jury, the judgment will not be reversed on appeal. Grant v. Milam, 20 Okla. 672, 95 Pac. 424; Kidwell v. Nelson, 31 Okla. 228, 120 Pac. 966; Harrill v. Parkinson, 27 Okla. 528, 112 Pac. 970.

The plaintiff complains that the court instructed the jury that is was the duty of the plaintiff to "expeditiously" complete the well. The duty rested on the plaintiff to exercise ordinary efforts to complete the test. There is so little difference between the phraseology used and that to which the plaintiff was entitled, we think the plaintiff did not thereby suffer substantial injury to its rights. There was more or less testimony offered by both parties which was incompetent, but it is not apparent that the plaintiff's rights were injured thereby. As the evidence shows that the production in the Bartlesville sand was equal to that in the Skinner sand, it is not probable that the jury considered the evidence relating to the setting of the casing and manner of drilling the well for any purpose, other than to determine whether or not the plaintiff exercised ordinary care in drilling a well that would have produced oil or gas if it had struck a bearing sand. The receiving of such testimony would not result in anything more than technical error, and, therefore, harmless. Diamond v. Inter Ocean News Paper Co., 29 Okla. 323, 116 Pac. 773; Hertzell v. Weber, 31 Okla. 5, 120 Pac. 589; American Trust Co. v. Chitty, 36 Okla. 479, 129 Pac. 51.

Therefore it is recommended that the judgment be affirmed.

By the Court: It is so ordered.